IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT COLUMBIA

| | |
|---|---|
| **JEREMY W. THORPE** ) | |
| ) | |
| v. ) | **NO: 1:23-cv-00052** |
| ) | |
| **ARAMARK CORRECTIONAL** ) | |
| **SERVICES** *et al.* ) | |

TO:   Honorable William L. Campbell, United States District Judge

# R E P O R T   A N D   R E C O M M E N D A T I O N

This *pro se* prisoner civil rights action has been referred to the Magistrate Judge for pretrial proceedings. *See* Order entered September 19, 2023 (Docket Entry No. 12).

Pending before the Court is the motion to dismiss (Docket Entry No. 18) filed by Defendants Aramark Correctional Services, LLC ("Aramark"), Jeremy Smith, Valerie Miller, and Dawn Wright. Plaintiff opposes the motion. For the reasons set out below, the undersigned respectfully recommends that the motion be **GRANTED IN PART AND DENIED IN PART** as set out herein.

## I. BACKGROUND

Jeremy Thorpe (Plaintiff) is an inmate in the custody of the Tennessee Department of Correction ("TDOC") confined at the Turney Center Industrial Complex ("Turney Center") in Only, Tennessee. He filed this *pro se* lawsuit in the Chancery Court of Hickman County on June 5, 2023, seeking $900,000.00 in damages. *See* Complaint (Docket Entry No. 1-1). The complaint names Aramark Correctional Services ("Aramark"), Food Services Director Jeremy Smith ("Smith"), Food Services Manager Valerie Miller ("Miller"), and Head Stewardess Dawn Wright

("Wright") as Defendants. The individual defendants are all sued in only their official capacities. *See* Complaint at 3. On August 29, 2023, the lawsuit was removed to this Court by Defendant Aramark on the basis of federal question jurisdiction. *See* Notice of Removal (Docket Entry No. 1). Plaintiff did not object to removal.

Plaintiff alleges that he was an inmate worker in the prison kitchen on January 9, 2023, when Wright told him that someone called her "nigger lover" because she had conversed with Plaintiff in the kitchen. Even though Plaintiff was not called the disparaging name, he took offense, prompting him to report the incident to Food Services Supervisor Pamela Stevenson and to later file a Title VI grievance, asserting:

> Discriminatory remarks of this nature are in violation of state law and regulations and if not addressed, can seriously interfere and may result in prejudicial actions that are non-conducive to the functioning of the kitchen, which consists of a combination of racially diverse inmates,

and seeking as a solution "interview food stewardess to find out inmate who made racist statement and have him or they removed from kitchen." *See* Docket Entry No. 1-1 at 9-10. The grievance was ultimately found to lack merit as a Title VI grievance because Plaintiff failed to show that he had been the victim of any discriminatory treatment, *see* Docket Entry No. 1-1 at 15-16, but Plaintiff alleges that the investigation of the grievance led to Wright's removal as a "food stewardess" and the removal from the kitchen of the inmate who made the disparaging remark. *See* Complaint (Docket Entry No. 1) at 4, ¶¶ 10-11. Plaintiff contends that Smith, Miller, and Wright were each deficient in their duties because they should have investigated the incident upon his verbal complaints and without the necessity of him filing a grievance. *Id*. at ¶¶ 12-14
2

Plaintiff alleges that on the same day as his grievance was investigated by TDOC official Brad Cotham, he received a disciplinary report from Miller for "solicitation of staff" based upon accusations made by Wright that he had made inappropriate comments to her. *See* Docket Entry No. 1-1 at 19-20. Plaintiff alleges that the disciplinary report was retaliation against him because of the Title VI grievance that he filed. *See* Complaint at 4, ¶ 15. Although Plaintiff was initially removed from his job in the kitchen because of the disciplinary report being filed, he was restored to his job and the disciplinary report was dismissed by Cotham as a result of his investigation into the Title VI grievance. *See* Docket Entry No. 1-1 at 12.

Upon initial review of Plaintiff's complaint under 28 U.S.C. ' 1915A, the Court dismissed a claim Plaintiff sought to bring under 42 U.S.C. ' 1997d but permitted the lawsuit to proceed against the named Defendants on the following claims: 1) a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.; (2) a corresponding claim under the Tennessee Human Rights Act ("THRA"), Tennessee Code Annotated § 4–21–101 *et seq.;* and, 3) a claim under 42 U.S.C. ' 1983 for retaliation. *See* September 19, 2023 Order at 1-2.[1] In permitting the Title VII claim to proceed, the Court noted that administrative exhaustion is required for legal claims brought under Title VII and directed that Plaintiff "demonstrate exhaustion by submitting his right-to-sue letter or explaining how he has otherwise exhausted those claims. If Plaintiff

---

[1] Because Plaintiff did not seek and was not granted *in forma pauperis* status, and because Defendants filed an early motion to dismiss in response to the complaint (a motion to dismiss that was subsequently denied as moot in light of their filing of the pending motion to dismiss, *see* Order entered October 11, 2023 (Docket Entry No. 20)), the Court relieved the U.S. Marshal from the obligation to serve process in this case. *See* Order entered November 14, 2023 (Docket Entry No. 24). In their pending motion to dismiss, Defendants do not challenge the sufficiency of services and accordingly have waived any such defense.

3

fails to do so, those claims will be dismissed." *See* Memorandum Opinion (Docket Entry No. 11) at 8.

## II. MOTION TO DISMISS, RESPONSE, AND REPLY

In lieu of an answer, Defendants have filed the pending motion to dismiss, seeking dismissal of Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue: 1) Plaintiff's Title VII and THRA claims warrant dismissal because inmates are not employees under Title VII or Tennessee law; 2) even if Plaintiff is an employee for the purposes of Title VII, he has not shown administrative exhaustion of his claim; and, 3) Plaintiff fails to state a claim for retaliation because he suffered only a *de minimis* impact as a result of the disciplinary charge. *See* Defendants' Memorandum of Law (Docket Entry No. 19).

Plaintiff responds by arguing that he should be viewed as an employee because TDOC outsources the management of food services, including labor, to Aramark, a private entity, and therefore his inmate job in the prison kitchen is not a condition of his incarceration but is instead more akin to an employment relationship. *See* Response (Docket Entry No. 23) at 1-2. He contends that, with respect to exhaustion, he submitted a correspondence to the EEOC for his Title VII claim and that exhaustion is not required for a THRA claim. *Id*. at 3-4. Finally, Plaintiff asserts that the alleged facts show that he was issued a disciplinary report in retaliation and that the issuance of such a report satisfies the harm standard required for a constitutional retaliation claim. *Id*. at 4-5.

Defendants reply by pointing to T.C.A. § 41-21-207, which requires that "[a]ll persons sentenced to the penitentiary shall be kept at labor or at school when in sufficient health," and argue that nothing raised by Plaintiff in his response is sufficient to defeat the motion to dismiss. *See* Reply (Docket Entry No. 25).

4

## III. STANDARD OF REVIEW

A motion to dismiss filed under Rule 12(b)(6) is reviewed under the standard that the Court must accept as true all the well-pleaded allegations contained in the complaint and construe the complaint in the light most favorable to Plaintiff. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11-12 (6th Cir. 1987). Because Plaintiff is a *pro se* litigant, the Court is also required to view his complaint with some measure of a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).

Although the complaint need not contain detailed factual allegations, the factual allegations supplied must be enough to show a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-61 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a plausible claim for relief, the alleged facts must provide more than a sheer possibility that a defendant has acted unlawfully. *Mik v. Federal Home Loan Mortg. Corp.*, 743 F.3d 149, 157 (6th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). The well pleaded factual allegations must "do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

## IV. ANALYSIS

### A. Title VII Claim

Plaintiff's Title VII claim must be dismissed. First and foremost, the Court declines to adopt Plaintiff's novel argument that a prison inmate performing an inmate job during his

5

incarceration falls within the definition of an employee under Title VII.[2] To be sure, prison inmates often work jobs for compensation within the facility in which they are incarcerated. However, the prison setting is an obviously unique situation that is not readily analogous to any other workplace, and working a prison job while confined as a convicted inmate is not analogous to "employment" in any normal understanding of the word.

      Plaintiff has not pointed to any decision in which a court has directly found that a prison inmate worker is an employee for purposes of a Title VII claim. While the Court acknowledges that the 9th Circuit in *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994) stated that prisoners could be reasonably viewed as "employees" for purposes of Title VII in certain circumstances, the statement was not necessary for the decision and was therefore simply *dicta*. Further, and more importantly, the statement is out-of-step with the weight of authority within the Sixth Circuit. *See Overholt, Jr. v. Unibase Data Entry, Inc.*, 2000 WL 799760, at *3 (6th Cir. 2000) ("It is unclear whether prisoners are protected under Title VII."); *Lacey v. Ohio Dep't of Rehab. & Corr.*, No. 18 CV 2006, 2019 WL 233619, at *2 (N.D. Ohio Jan. 16, 2019) ("An inmate working in a correctional institution does not have an employment relationship with the correctional institution for purposes of Title VII."); *Peebles v. Williamson Cnty. Just. Ctr.*, 2015 WL 2121460, at *3 (M.D.Tenn. May 5, 2015) (Campbell, J.) ("Prison inmates working at prison jobs are not 'employees' authorized to bring suit under Title VII."); *Evans v. Watson*, 2013 WL 3819247, at *4 (W.D. Mich. July 23, 2013) ("even if Plaintiff had filed a charge with the EEOC, he is not properly an employee for purposes of a Title VII action."); *Gooding v. United States*,

---

[2] According to Plaintiff's theory, the TDOC, which is the state department responsible for the management and operation of the Tennessee prison system and the several thousand inmates within the system, should be viewed as an "employment agency" under Title VII for the purposes of his lawsuit. *See* Response at 2.

6

2010 WL 925793, at *4 (E.D.Tenn. Mar. 9, 2010) ("[P]laintiff was not an employee of the [Bureau of Prisons] for purposes of Title VII."). *Moyo* is also contradicted by decisions from other circuits which directly address the issue. *See Iheme v. Smith*, 529 F.App'x 808, 809 (8th Cir. 2013) (dismissing prison inmate's Title VII claims); *Wilkerson v. Samuels*, 524 F.App'x 776, 779 (3d Cir. 2013) (inmate worked is not an employee under Title VII); *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991) (inmate was not an employee under Title VII). *But see Baker v. McNeil Island Corr. Ctr.*, 28 F.3d 104 (9th Cir. 1994) (noting that the district court "assumed without deciding" that prison inmate had an employment relationship for purposes of Title VII claim).

Second, even if the Court were to presume that Plaintiff was an "employee" for purposes of Title VII, Plaintiff has not shown (1) that he exhausted administrative remedies with the Equal employment Opportunity Commission ("EEOC") for his claim and (2) that he received a right-to-sue letter from the EEOC prior to filing his lawsuit. Both conditions are necessary predicates to pursuing a Title VII claim in court. *Granderson v. Univ. of Mich.*, 211 F.App'x 398, 400 (6th Cir. 2006); *E.E.O.C. v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir. 1999); *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir.1998).

Although Plaintiff states in his response to the motion to dismiss that he has submitted evidence of an excerpt from a Turney Center institutional logbook "which documents the submission of correspondence regarding the matters contained with this civil action to the EEOC on February 13, 2023," *see* Response (Docket Entry No. 22) at 3, ¶ 1,[3] this statement fails to show either administrative exhaustion or the receipt of a right-to-sue letter. Further, this

---

[3] Plaintiff is referring to a document that appears to indicate that Plaintiff requested a stamp for mailing a letter to the U.S. EEOC Area Director. *See* Docket Entry No 14 at 5.

statement is woefully inadequate to show any basis upon which to excuse a failure to satisfy the prerequisites necessary to litigate a Title VII claim.

### B. THRA Claim

This claim should be dismissed. Both the THRA itself and the case law surrounding THRA claims are silent on the issue of whether a prison inmate is an employee for the purposes of pursuing an employment discrimination claim under the THRA.[4] However, employment discrimination claims under Title VII and the THRA are evaluated identically. *See Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008) (citing *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)). As such, and in the absence of contrary case law, the Court finds no basis upon which to conclude that Plaintiff, as an inmate working a prison job, is an employee for the purposes of his THRA claim.[5]

### C. Retaliation Claim

The motion to dismiss Plaintiff's retaliation claim should be granted as to Defendants Aramark and Smith. Plaintiff's complaint implicates only Defendants Miller and Wright in this claim and fails to set forth factual allegations that provide a basis for maintaining the retaliation claim against Aramark and Smith. *See* Complaint a 4, ¶ 15. Accordingly, Plaintiff fails to state a claim for relief against Aramark and Smith and they should be dismissed from the case.

As to Defendants Miller and Wright, however, the Court finds that the argument that they set out in their motion does not support dismissal of the retaliation claim. Although Defendants

---

[4] Although Defendant cites to *Howard v. Uselton*, 774 S.W.2d 925 (Tenn. 1989), for the proposition that an inmate worker cannot be an employee of the inmate's custodian because there is no contract for hire, *Howard* is a case that involves worker's compensation eligibility and not the THRA.

[5] Defendants do not argue that a showing of exhaustion is required to pursue a THRA claim. *See* Reply at 1.

Miller and Wright correctly recognize *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999), as setting out the legal test in the Sixth Circuit for a First Amendment retaliation claim that is brought by a prison inmate,[6] their argument that Plaintiff's allegations are not sufficient to meet this test relies entirely upon law from outside the Sixth Circuit. Indeed, Defendants fail to cite a single case from within the Sixth Circuit in support of their contention that Plaintiff's alleged harm is so *de minimis* that the harm does not constitute a sufficiently adverse action to support a First Amendment retaliation claim. *See* Memorandum in Support (Docket Entry No. 19) at 6-7.[7] While the Court, in the absence of relevant case law from the Sixth Circuit, may look to the law from other circuits for guidance, that is generally appropriate only when there it not controlling law from within the Sixth Circuit itself, which is not the case here. There is extensive caselaw within the Sixth Circuit about First Amendment retaliation claims, none of which Defendants reference or acknowledge other than reciting the test set out in *Thaddeus-X*. In the absence of an analysis showing why the law of this circuit supports their argument, Defendant Miller and

---

[6] To state a claim for First Amendment retaliation, Plaintiff must show: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and, (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct. *Thaddeus-X*, 175 F.3d at 394. While a defendant may ultimately be able to prevail on a claim upon summary judgment by showing that he or she would have taken the same action in the absence of the protected activity, *id*. at 399, this issue is not pertinent to the instant motion to dismiss.

[7] Differences in case law between circuits is not insignificant. For example, Defendants rely on case law from other circuits to argue that Plaintiff cannot show actionable retaliation because he filed a second grievance after the occurrence of the acts alleged to be retaliation against him due to the first grievance ("Plaintiff's claim is *de minimis*, as evidenced by Plaintiff's filing of a second grievance five days later." *See* Defendants' Memorandum at 7. However, this is contrary to the law of this circuit. *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) ("The relevant question is whether the defendants' actions are 'capable of deterring a person of ordinary firmness;' there is no requirement that the plaintiff show actual deterrence.").

9

Wright, as the moving party, simply fail to show that they are entitled to dismissal of Plaintiff's retaliation claim for failure to state a claim.[8]

## V. RECOMMENDATION

For the reasons stated, it is respectfully **RECOMMENDED** that the motion to dismiss (Docket Entry No. 18) filed by Defendants Aramark Correctional Services, LLC ("Aramark"), Jeremy Smith, Valerie Miller, and Dawn Wright:

1) be **GRANTED IN PART** and that Plaintiff's claim under Title VII, his claim under the THRA, and his claim of retaliation against Defendants Aramark Correctional Services, LLC, and Jeremy Smith be **DISMISSED** under Fed. R. Civ. P. 21; and.

2) be **DENIED** with respect to Plaintiff's retaliation claim against Defendants Valerie Miller and Dawn Wright.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[8] Although Defendants' reply includes citations to two cases from this Court that address prisoner retaliation claims, *see* Reply at 3, neither case is particularly illuminating with respect to Plaintiff's claim.

Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge